HEARD NOVEMBER TERM, 1877.

### ARTHUR *vs.* ANDERSON.

Proof of the execution of a deed, with proof of acknowledgment, is not conclusive evidence of delivery.

Where a deed shows upon its face that it was intended to be jointly executed, so that all parties should be bound by the covenants, an execution and delivery by some of the parties only is incomplete and does not bind them.

Specific performance refused, on the ground that the evidence of a contract to convey was insufficient.

## BEFORE COOKE, J., AT COLUMBIA, MAY, 1876.

This was an action by Jesse Arthur, William L. Arthur, John F. Arthur, F. H. Mitchell and Mary L. Mitchell, his wife, *against* Robert Anderson, Eliza Anderson, Margaret A. Meeker and Cornelia Arthur.

The case is fully stated in the Referee's report, which is as follows:

I. John W. Arthur, the father of plaintiffs, died on or about March 9, 1862, intestate, leaving surviving him, as stated in the complaint, four, but, as appears in evidence, five children, all infants under the age of twenty-one years, and one of whom died shortly afterwards, the time of her death not appearing in evidence. The intestate also left his widow, the defendant Cornelia Arthur.

II. The intestate died possessed of some considerable property, for a description of which reference may be had to the evidence herewith submitted. It also appears that he died considerably in debt. A portion of his estate was the lot of land in the city of Columbia which is the subject matter of litigation in this action.

III. Mrs. Cornelia Arthur, some time in the year 1863, contracted with one Robert Anderson, the younger, for the sale to him of the lot in question, for what price does not appear. Received from him the purchase money, put him in possession of the premises, and executed to him a bond, with one G. V. Antwerp as surety, in the penalty of nine thousand dollars, conditioned to procure for him good and sufficient titles to the lot, through the Court of Equity, within one year from the date of the bond, which bears date June 24, 1863.

IV. The defendant, John F. Arthur, attained the age of twenty-one years September 20, 1869, and William L., December 16, 1871; the others were older.

V. Robert Anderson, the younger, took possession of the land in 1863 and held possession till 1866, when he assigned or transferred the bond and surrendered possession of the land to his father, Robert Anderson, the elder, who held possession till his death, the date of which does not appear. He died leaving the defendants, Robert Anderson, the younger, Eliza Anderson and Margaret A. Meeker, his heirs-at-law and distributees of his estate.

VI. A deed bearing date July 14, 1873, at which time William L. Arthur, the youngest of the plaintiffs, was between twenty-two and twenty-three years, and John F., the next youngest, was between twenty-four and twenty-five years of age, was prepared by Mr. Bachman, the attorney of the defendants Anderson and Meeker, reciting the alleged circumstances under which the con-tract of sale had been made and the bond given by Mrs. Cornelia Arthur to Robert Anderson, the younger, the assignment of the bond and transfer of the premises from Robert Anderson, the younger, to Robert Anderson, the elder, the death of Robert Ander-son, the elder, leaving his heirs-at-law and distributees as above stated, and further reciting that: "Whereas the heirs-at-law and distributees of John W. Arthur, deceased, are now all of full age, and desire and are willing to execute the title to the land herein-after described, in accordance with the requirement of the bond above mentioned;" and proceeding to convey the premises in question, in consideration of the premises and of the bond and of one dollar by the heirs-at-law and distributees of John W. Arthur (naming them) to the heirs-at-law and distributees of Robert An-derson, the elder, (naming them,) in the statutory form of release of real estate of use in this State, with general warranty. This deed purports to have been "signed, sealed and delivered" by the parties executing the same, in the presence of the witnesses, (two to each signature). And it is proved to have been so "signed, sealed and delivered" by the oath of one of the witnesses to each signature, as follows: i. e., as to John F. Arthur, before a Notary Public of Richland County, July 14, 1873; as to William L. Arthur, before a Trial Justice of Kershaw County, July 23, 1873; and as to F. H. Mitchell and Mary L. Mitchell, before a Commissioner for South Carolina residing at Wilmington, North Carolina, May 11, 1874. There further appears upon the deed the certificate of a Commis-sioner of Deeds for South Carolina, residing at Wilmington, North Carolina, that Mrs. Mary L. Mitchell, wife of F. H. Mitchell, re-

nounced her inheritance in the premises mentioned in the deed. This certificate bears date May 11, 1874, and is signed by Mrs. Mitchell and by the Commissioner under his official seal. The signatures of Mr. and Mrs. Mitchell, and of their witnesses, and of the Commissioner who took the probate of the deed in Wilmington and the renunciation of inheritance, are erased from the deed. The names of the witnesses in the body of the certificate of probate and the name of the Commissioner, together with the words "at least seven days," in the body of the renunciation of inheritance, are also erased; but none of these words are so much obliterated that they cannot be deciphered. The deed is not signed by Jesse Arthur.

VII. From the testimony of John F. Arthur, W. K. Bachman, William L. Arthur and J. T. Hay, I think it is clear that John F. and William L. delivered the deed for the purposes therein expressed, and according to its legal effect.

VIII. It is alleged in the complaint and controverted in the answer that John F. and William L. Arthur were surprised to learn, after they had signed the deed, that the defendants had proposed to pay to Jesse and Mitchell and wife, outside the deed, considerable sums of money, as the real consideration offered to them upon which they were to sign the deed. The only evidence to this point is that of Mr. Bachman, who says that John F. not only knew that Jesse demanded pay but expressed disapprobation of his making the claim. The facts in regard to this seem to be that the deed was presented first to John F. and William L., residents of this State, and executed by them, and afterwards communicated to the others, who demanded compensation as a consideration for their signatures; and that Jesse afterwards refused to sign the deed because his younger brothers had not been compensated, and Mitchell and wife erased their signatures at the instance of Jesse.

IX. The allegations of the ninth paragraph of the complaint denied by the answer in so far as they state facts have been already considered, and in so far as they raise a question of law will be considered hereafter.

X. The interest of Mrs. Cornelia Arthur in the property was one-third as the widow of the intestate, and one-fifth of one-fifth, or one twenty-fifth, as co-distributee with her surviving children of the share of her deceased child.

XI. As to rents and profits, it appears that they were extremely inconsiderable, (three dollars per month for about three years,) except the rent of the house built by defendants; while the taxes paid by defendants from 1866 to 1875, inclusive, amounted to $416.30, and repairs $260. I shall, therefore, not entertain the question of rents and profits. The dwelling house erected on the premises by defendants was destroyed by fire in 1873. Since the fire there has been no tenant.

The plaintiffs demand judgment: 1. For partition, claiming two-thirds of the premises; and 2d. For rents and profits.

The defendants, by way of defense, allege: 1. That a full price was paid for the property, and that the same was applied by Mrs. Cornelia Arthur to the payment of the debts of her intestate and the support of the family. 2. That a conveyance of the property to the defendants was executed and delivered to defendants by John F. and William L. Arthur; and that the said Jesse Arthur agreed to execute the deed upon the payment to him of three hundred dollars, and the said Mitchell and wife upon the payment to them of two hundred dollars; and it was urged in evidence and argument, though not distinctly stated in the answer, without objection. The question of a valid contract, under the Statute of Frauds, though not raised by the pleadings, was one of the chief, if not the chief, questions considered both in evidence and argument.

The issues of law presented are:

1. Was the contract between Mrs. Cornelia Arthur and Robert Anderson, the younger, such a one as the Court of Equity would confirm?

2. Was there such an agreement in writing on the part of Jesse Arthur, under the Statute of Frauds, as the Court would enforce?

3. Was there such a contract on the part of Mitchell and wife?

4. Was there a legal execution and delivery of the deed by Mitchell and wife?

5. Are John F. and William L. bound by their execution and delivery of the deed, in the event it shall be determined that Jesse Arthur and Mitchell and wife, or either of them, are free from the obligation of executing it? In other words, whether the deed is joint, and only to be enforced against all on its execution by all, or several and binding on each one separately?

1. There is no question that Mrs. Cornelia Arthur, whether as administratrix or distributee, had no right or power to convey more

than her undivided interest, and that her bond to Anderson did no more than to constitute him a tenant in common with the plaintiffs to the extent of that interest. It is true that circumstances may exist under which the Court would order such a sale, and that the Court will confirm that which it would have ordered. But although the circumstances of this estate were very much embarrassed, and there might very possibly have been such a state of things as would have justified the sale, and that the Court might possibly have ordered it if the contemplated application had been made, and that such application might have been made and granted but for the events of the period, yet it is not proved that such a state of facts did actually exist. In fact, though some evidence was given on this point, yet it was not seriously urged. I therefore rule that Mrs. Arthur's agreement to convey was void, except to the extent of her undivided share.

2. As to Jesse Arthur, there appears to have been some correspondence on the subject between him and Mr. Bachman. Jesse addressed a letter, bearing date January 12th, 1873, to Mr. A. C. Moore, an attorney of this city, in which, after speaking on other subjects, he proceeds as follows: "There is another matter I would like you to attend to for me. You recollect some time since I wrote you about property which my mother sold to a man named Anderson. Since writing to you I believe all the heirs but myself have signed the deed. I desire to have my interest looked into. John can tell you all about the matter. Examine into it and let me know what can be done. I am determined to have what I am justly entitled to, and propose to put the parties *in statu quo*, as I would undoubtedly be required to do by a Court of Chancery. Ask John to tell you the names of the attorneys who wrote to me on the subject.—Yours, &c., JESSE ARTHUR." In another letter to Mr. Moore, bearing date April 2d, 1874, Jesse Arthur says: "Yours received. I have to say about the Anderson property, that you are right in supposing Court of Equity refused to order deed for property. The facts are these: At the time sale was made there was more than enough personal property belonging to my father's estate to pay all his debts, and therefore no equity Court would order sale of realty. As for filial duties, that's all bosh! I intend to claim my just dues, and if parties will not make equitable settlement I want you to bring suit. If necessary, I will come to Columbia and look after the matter. I want the matter well attended to, and, if you

think best, will employ additional counsel to assist you. I can't tell how much to ask Mr. Bachman for my interest, for I know nothing as to the value of the property. I will be compelled to leave that to you. I am willing to settle on this basis: take present valuation of property, then deduct amount paid by Anderson in gold at the time payment was made; let use of property be stood off against interest, and I am willing to take my share of difference and make a deed; otherwise I shall commence proceedings immediately."

The introduction of this letter was objected to by the plaintiffs and the exception taken that it was a private and confidential communication from Jesse Arthur to A. C. Moore, his attorney; and it was argued that it was not an agreement between Moore and Bachman, much less was it a contract between Arthur and Bachman, but contained only the basis of a treaty upon which a contract was to be made.

The proposition contained in this letter was communicated by Mr. Moore to Mr. Bachman and accepted by him. In fact, the letter was either read to Mr. Bachman or read by him. Shortly thereafter Mr. Jesse Arthur came to Columbia, and, with Mr. Moore, went to Mr. Bachman's office, and, referring to the proposition contained in the letter of Arthur to Moore, made the calculation, which fixed the amount of his demand at three hundred dollars. This, I think, occurred on Saturday. The date is not on my notes of evidence; but this is my recollection, though I may be mistaken. It is, however, unimportant. It is uncertain whether Mr. Bachman then and there agreed to pay that sum and asked time for payment or asked time to determine whether he would pay it or not. In either case the time asked was accorded by Mr. Arthur, and the following Monday was fixed for payment. On that day Mr. Bachman tendered the amount (three hundred dollars) to Mr. Arthur, who then refused to receive it and withdrew from the engagement. I think his refusal came too late. If the contract can be supported in other respects, it certainly was accepted and payment tendered at the day. It is not necessary that the acceptance, under the circumstances, should have been in writing.—See Fry on Spec. Per. of Contracts, Secs. 181–186, pp. 81–83. The proposal became a contract at the moment of acceptance, and could not afterwards be receded from, but was binding on both parties.

The elements of a valid contract in relation to real estate, under the Statute of Frauds, are well stated by Mr. Fry at Section 341: "The object of the Statute of Frauds being to prevent the mischief arising from a resort to parol evidence to prove the existence and the terms of the alleged agreement in the cases specified in it, it is obvious that the mischief is avoided wherever there exists, under the hand of the party sought to be charged, a written statement, containing either expressly or by necessary inference all the terms of the agreement; that is to say, the names of the parties, the subject-matter of the contract, the consideration and the promise, and leaving nothing open to future treaty. This, therefore, is sufficient to satisfy the statute; and provided this be found, no formality is required, nor does it signify at all what is the nature or character of the document" [and here he might have said documents, for they may be many,] "containing such written statement, whether it be a letter written by the party to be charged to the person with whom he contracted, or to any other person, or a deed or other legal instrument, or an answer to a bill, or an affidavit in chancery, in bankruptcy or in lunacy;" and it may be said, in addition, any instrument of writing whatever, signed by the party to be charged or his authorized agent or attorney.

The letters of Jesse Arthur to Moore are, taken separately, in many respects vague and indefinite; but construed together, and in connection with subsequent documents, they assume a more distinct and intelligible form. The first letter, dated January 12th, 1873, (and which I think was written in January, 1874,) speaks of "property which my mother sold to a man named Anderson;" and "since writing to you, I believe all the heirs but myself have signed the deed. I desire to have my interest looked into;" and "ask John to tell you the names of the attorneys who wrote to me on the subject." In the second letter he speaks of the "Anderson property," and calls it "realty" of the estate of his father, as opposed to personal property; speaks of "filial duties;" expresses his intention to "bring suit" if parties will not make equitable settlement; speaks of coming "to Columbia" to look after the matter. He then proceeds: "I can't tell how much to ask Mr. Bachman for my interest;" and states his proposal in these terms: "I am willing to settle on this basis: take present valuation of property, then deduct amount paid by Anderson in gold at the time payment was made; let use of property be stood off against

interest, and I am willing to take my share and make a deed; otherwise I shall commence proceedings immediately." And he did shortly thereafter commence proceedings; in fact, almost immediately after breaking off the treaty with Mr. Bachman, the agent of the Andersons. Now, no human mind acquainted with the circumstances could doubt for a moment what property or what parties are referred to in these letters; but I suppose that a stranger to the transaction would have to resort to evidence *aliunde* to determine these points. He would be satisfied on the following points: that they referred to a sale by his mother to one Anderson of some real estate in Columbia belonging to the estate of his deceased father; that he supposed a deed of this property had been made by the other heirs of his father and contained the terms upon which he would execute a deed for his interest in the property, and that Mr. Bachman was the agent or attorney with whom he was to treat. But it could not be determined from the letters alone what the particular property was or who was the man named Anderson referred to in the letters. And, if there were no more, I should be compelled at this point to decree that there was no sufficient memorandum in writing to satisfy the requirements of the statute. But the complaint in the action, signed by the attorneys of Jesse Arthur, supply, I think, the defects of the letters and satisfy the statute; and I, therefore, adjudge and decree that there was sufficient contract between Jesse Arthur and the defendants Anderson, and that he do execute to them the proposed title on receiving the sum of three hundred dollars.

3. In July, 1873, the deed in question was, after having been executed by Mr. William L. Arthur, sent by Messrs. DePass, Hay & DePass, of Camden, to the plaintiffs Mitchell and wife, at Wilmington, North Carolina. A letter bearing date July 30, 1873, was addressed by Mr. Mitchell to Messrs. Bachman & Youmans in these words: "Yours dated 15th, also a deed from Messrs. DePass, Hay & DePass, Camden, have been received. In reply have to say that I am considering the matter, and will report *our* decision shortly in regard to signing the papers." Nothing further is heard of the deed till April 4th, 1874, when Mr. Mitchell writes to Messrs. Bachman & Youmans, by postal card, as follows: "Mr. A. H. Van Bokkelen delivered your message. My wife positively refuses to sign the papers unless she is compensated beforehand to the amount of $200." And again, on May 16th, as follows: "Your favor of 14th

instant received. In reply, must say that I respectfully decline your offer of $200, in view of facts learned and information gained recently regarding the property. Mr. Arthur (my brother-in-law) has interviewed you on the subject, and his views agree with mine and my wife's. Mr. Van Bokkelen tendered us the money to-day, and we respectfully declined to receive it." Mr. Mitchell was examined by commission as to his authority to represent his wife, and indirectly, and somewhat evasively, denies his agency. I should, however, notwithstanding this denial, or rather from the scope of his answers, taken in connection with the relation of husband and wife between the parties, and the terms of his several letters to Messrs. Bachman & Youmans, in all of which he speaks of his wife's opinion, be inclined to regard him as her agent. In the first he says he will report, not his but "*our*" decision, and in the postal card he says "my wife positively refuses to sign the papers unless," &c.; and in his answers to the interrogatories he admits conversations with her on the subject before writing the postal card, and the postal card itself imports consultation and concurrence. But I think the letters too indefinite to form the basis of a contract. The word "papers" is too indefinite to connect the writing with the subject-matter, and besides there does not appear to have been any acceptance of the offer until after the erasure of the names from the deed and other papers connected with it. I therefore adjudge that no contract has been proved sufficient to bind the plaintiffs, the Mitchells.

4. The question then recurs, was there a legal execution and delivery of the deed by the plaintiffs F. H. Mitchell and Mary L. Mitchell, his wife? The deed is in evidence. It purports on its face to have been delivered, and is signed and sealed by Mitchell and wife in the presence of two witnesses. It does not appear when it was executed by them, but on the 11th day of May, 1874, one of the witnesses swears, before a proper officer competent to administer an oath, that he and the other witness saw F. H. Mitchell and Mary Louisa Mitchell sign, seal, and as their act and deed *deliver* the deed, which oath is certified by the officer under his hand and seal. In addition to this, Mrs. Mary L. Mitchell goes before a competent officer and declares, under her hand and seal, that she did before her examination join her husband in executing the deed, "and that she did then, and still does, at this her examination, freely, voluntarily," &c., "renounce, release and forever relinquish unto the

within named Robert Anderson, Eliza Anderson and Margaret A. Meeker, their heirs and assigns, all her interest and estate, and also all her right and claim of inheritance of, in and to all and singular the premises within mentioned and released." And this declaration is certified by the officer under his hand and seal.—Rice Ch., 243. All this, I think, imports delivery; and delivery for a moment is delivery forever. The erasures must have been made after the signatures, as they are erasures of the signatures. The signatures were not made for the purpose of being erased, but to give a solemn attestation, not only to the execution but the delivery of the deed. There is no evidence in whose possession the deed remained between the times of execution and erasure, except the fact that it came to Messrs. Pope & Haskell, the plaintiffs' attorneys, after a telegraphic dispatch from Jesse Arthur to Mitchell and wife, desiring them not to sign the deed, or, if they had signed it, to erase their names and send the paper to Messrs. Pope & Haskell. The presumption is, therefore, that it was in the actual possession of Mr. and Mrs. Mitchell at the time of their receiving the telegram; but the stronger presumption is, that until the receipt of the telegram it was in their hands for the purpose of being sent to Messrs. Bachman & Youmans, the defendants' attorneys, as directed in the letter of Messrs. DePass & Hay, testified to by Mr. Hay, having been withdrawn after delivery from the hands of the attesting officer for that purpose. A very short time, it is true, must have elapsed between the signatures to these papers and the erasure of those signatures, inasmuch as the attestation in Wilmington bears date May 11th, 1874, and Mr. Pope testifies that the deed was in his possession in Columbia on the 13th of the same month. But a moment is sufficient for the delivery, and once made it is final. It is manifest that the erasure was an afterthought, suggested by the telegram, after the execution of the papers. I do not mean to decide that these solemn evidences of delivery might not have been rebutted, but it was surely incumbent on the parties making the erasures to show by evidence that, notwithstanding these proofs, there was in fact no delivery. Having omitted to state in its proper place, I state here that it was proved by Mr. Pope that there was in the package containing the deed a memorandum in writing, addressed to Jesse Arthur, signed according to Mr. Pope's recollection (the memorandum having been lost) by Mr. and Mrs. Mitchell, certainly by one of them, the contents

of which were that they had returned the paper with their names struck out.

5. The views above expressed render unnecessary the consideration of the validity of the execution of the deed by John F. and William L. Arthur, in the event of its remaining unexecuted by the other parties.

I therefore adjudge:

1. That the plaintiff, Jesse Arthur, did make a valid agreement in writing to execute the deed in question, and it is ordered that he do execute the said deed on the payment to him of the sum of three hundred dollars.

2. That the plaintiffs, F. A. Mitchell and Mary L. Mitchell, his wife, did sign, seal and deliver the said deed for the purposes therein mentioned, and that it is their act and deed notwithstanding the erasures of their signatures, and of other signatures and words written upon the deed and papers annexed, all which erasures are hereby adjudged to be inoperative and void; and it is ordered that they do re-execute the deed, with proper solemnities, on the payment to them of two hundred dollars.

3. That the said deed is the act and deed, signed, sealed and delivered, of the plaintiffs, John F. Arthur and William L. Arthur.

4. That the demand of judgment by plaintiffs for partition and account is hereby refused.

The plaintiffs excepted upon the following grounds:

I. Because the complaint stated a case and prayed for a partition of real estate between tenants in common, the plaintiffs having a right to the same, as was admitted by the decree upon the facts stated in the complaint. And herein it is respectfully submitted that the alleged agreement, not set forth in the answer but introduced in the evidence by way of defense, made the defendants in fact the actors, and required of them the proof of the supposed agreement, and the establishment by them of every fact necessary to support the said supposed agreement and to override the plaintiffs' admitted legal rights; in other words, to establish as against the plaintiffs, by proof, the equity of defendants, which was set up to negative the case made by the plaintiffs.

II. Because the decree of the Referee, as affecting the legal rights of the plaintiffs, Mitchell and wife, in the land, is erroneous, and must be reversed upon the following assignments of error:

1. The land in question was the inheritance of the wife, and the letters of the husband could not bind the wife to any agreement for the sale of her inheritance, unless they were signed by her, or signed by some one expressly authorized by her; least of all could her husband so bind her. And upon the examination of the husband by the defendants, as their witness, he expressly stated, under oath, that she had never given him any such authority.

2. Admitting that the husband had such authority, the propositions made by his letters to Bachman were never accepted by Bachman, either in writing or by parol, and until there was such acceptance there was no contract, and the plaintiffs could at any time withdraw their proposals. And herein it is respectfully submitted that the tender of money made at Wilmington was never made, nor, indeed, was the money ever sent from Columbia to be tendered at Wilmington (the residence of Mitchell and wife) until Bachman knew that the canceled and undelivered paper was already in Columbia in the hands of Pope & Haskell, the attorneys of Mitchell and wife; the said document, in fact, being in Columbia on the 13th May, 1874, and tender not made in Wilmington until the 16th of the same month, when it was declined.

3. The Referee, admitting the force of this conclusion of fact, as well as the uncertain and vague character of the letters, as being wholly insufficient in law, erred in giving force and effect to a canceled instrument which (until otherwise proved to be valid) was to all intents and purposes without existence or as if the same had never been signed; and it is respectfully submitted that until the contrary was made to appear by the parties defendants, (who set up and claimed under the said instrument as being properly signed, sealed and delivered,) by the testimony of the witnesses thereto, or by some other evidence other than the paper itself, the same must be taken and deemed in law as non-existant, invalid and void for want of the prerequisites of an existing valid deed, under which the defendants could claim no rights whatsoever.

III. Because the decree of the Referee, as affecting the interest of Jesse Arthur as tenant in common in the land, is erroneous, and must be reversed upon the following assignments of error:

1. The letters of Jesse Arthur referred to in the decree as addressed to A. C. Moore were not in any sense, nor were they intended to be, a contract, as will abundantly appear from the letters themselves, their vague and uncertain language, and the ignorance of the writer as to the whole subject-matter to which reference is therein made, the said letters being in terms letters of inquiry and of suggestion, and not of proposal, thereby clearly not intending a sale nor an offer of sale, but authorizing merely a treaty for a sale which might be concluded by Moore if he deemed the same advisable, upon a basis suggested by Arthur as a scheme upon which a contemplated contract might be concluded; in other words, the letters of Arthur to Moore were, in fact and in contemplation of law, nothing more than a warrant of attorney to Moore authorizing *him* to treat with Bachman.

2. If there ever was a contract proposed between Moore, representing Arthur, and Bachman, representing Anderson, the *offer of Moore*, whether it contained the substance of the basis suggested in Arthur's letters, or contained some other terms, it is clear that *Moore's offer was the proposed contract,* which offer it is alleged was *accepted* by Bachman, and it is respectfully submitted that *this offer,* so accepted, was the thing to be evidenced by some writing signed by Moore and could not be proved by parol; in other words, if Moore's proposition embraced as its terms the suggestions of Arthur's letter, then that proposition embracing such terms must be evidenced by writing; if the proposition of Moore referred to terms that were in writing, then had the proposition itself been in writing the two writings might be read together and constitute a valid contract within the statute, but not otherwise.

3. It is respectfully submitted that the Referee is in error when he supposes and concludes by his decree that the unwritten proposal by Moore became a contract at the moment of the unwritten acceptance of the same by Bachman, which could not afterwards be receded from, but was binding on both parties; on the contrary, it is submitted that Bachman was not then, and never has been, bound by any contract. And it is further respectfully submitted that the Referee is equally in error when he resorts to evidence *aliunde* to determine the points of a contract that he admits to be vague and uncertain, and to this end sets up the statements of attorneys in the pleadings to satisfy the statute, in face of the fact admitted by the decree that the statute was insisted upon by the plaintiffs, against

whom the alleged agreement was set up by the evidence introduced by the defendants, which evidence the Referee admits was in itself, otherwise, too vague and uncertain to support a decree.

4. It is respectfully submitted that the decree of the Referee does not pretend that there was any binding agreement between Jesse Arthur and Bachman by any subsequent transactions between them personally, for the reason that none of those transactions were reduced to writing; and yet the Referee permits a parol, verbal reference to certain terms alleged to be in some written paper, and he permits this parol statement of terms (without the written paper being produced or delivered to the other party at the time) to be connected with a parol offer to sell and take a certain sum, and then permits an uncertain parol acceptance by one party (not binding on him) to be binding on the other—a parol agreement so uncertain that the Referee cannot say whether Bachman for the one party agreed to pay the sum named and asked time for payment, or asked time to determine whether he would accept the offer or not. It being hereby respectfully submitted that if time was given within which Bachman might accept or decline, that *probationary time* became part of the agreement of sale which must be evidenced by some writing to bind the party intended to be bound thereby; in other words, one party cannot be bound by a contract for the sale of lands to give time to the other party to make up his mind whether he should be bound or not, unless the agreement of the party alleged to be so bound thereby was in writing.

IV. Because the Referee has failed to decree upon the whole case, the question having been distinctly made that the alleged deed was a joint deed, to be signed, sealed and delivered by all of the parties thereto, and until so signed, sealed and delivered by all was in fact and in law the deed of none, was *inchoate*, and became by operation of law void and of none effect; by which default on the part of the Referee the Appellate Court, if deciding against him on the grounds taken in his decree, will be compelled to send the case back to the Referee for his judgment upon the points undecided by him, or proceed to hear and decide the case upon appeal without the benefit of the Referee's judgment thereon. This partial decree of the Referee, as a question of practice, it is respectfully submitted, is error, and should be corrected.

At the hearing of the case, His Honor ordered that the exceptions be overruled and the said report confirmed and made the decision and decree of this Court.

The plaintiffs appealed as follows:

Take notice that the plaintiffs appeal to the Supreme Court from the final decretal order of His Honor Judge Cooke, entered herein the 20th day of May, 1876, confirming the decree of Francis W. Fickling, the Referee, and overruling the exceptions to the same; the appeal being now taken to the said decretal order upon the same exceptions that were taken to the said Referee's decree at the hearing by the Court and overruled.

*Pope & Haskell,* for appellants.

*Bachman & Youmans,* contra.

February 5, 1878.   The opinion of the Court was delivered by

WILLARD, C. J.   The plaintiffs claim partition as tenants in common with the defendants of the premises in suit.   The nature of the question is fully stated in the Referee's report.

The first question to be considered is whether the deed which is claimed to have divested all of the plaintiffs except Jesse Arthur of title in favor of the defendants, Anderson and Meeker, is valid and operative as such.   If this deed was duly and completely executed and delivered by William L. and John F. Arthur, and by Mitchell and wife, then all the plaintiffs except Jesse Arthur are barred from demanding partitions, and the only question remaining would be as to Jesse Arthur.   It is not disputed that the defendant Anderson had acquired and held at the commencement of this action the title of Cornelius Arthur, one of the original distributees, but these defendants claim to hold the respective shares of the plaintiffs other than Jesse by the direct terms and operation of the deed in question.   The plaintiffs on the other hand deny that the deed was executed and delivered.

The deed was prepared as the deed of all the plaintiffs.   It states the fact of a tenancy in common and professes to be the deed of the heirs-at-law and distributees of John W. Arthur, deceased, the ancestor of the plaintiffs.   It acknowledges a joint consideration and contains a joint covenant of warranty.

In point of fact, it contains the signatures of William L. Arthur and John F. Arthur, and also the names of T. W. Mitchell and Mary L., his wife, but with an erasure made by the last named parties, with a view to withdraw their names from the deed. Jesse Arthur does not execute it. In order to carry out the design of this deed as manifested by its recitals, it should bear the signature of Jesse as well as those of the other plaintiffs.

Is there proof of delivery on the part of Mitchell and wife? The fact appears that they struck out their names from the deed while retaining it in their possession after signature thereto and proof and acknowledgment thereof. The Referee concludes, as matter of law, that the execution, with proof and acknowledgment, constitutes conclusive evidence of delivery that cannot be rebutted by parol. This is clearly erroneous. Execution and delivery are two distinct acts, both of which must be performed. Proving the deeds before the proper officers is part of the act of execution. It is therefore virtually holding that complete execution dispenses with not only the proof but the fact of delivery. The authorities on this point will be considered with a subsequent question. Independently of the fact of the proof and acknowledgment of the execution, there is not sufficient evidence to warrant a finding that there had been actual delivery as it regards Mitchell and wife, and in fact the Referee did so find. It is not necessary to trace the history of the deed after it left the hands of Mitchell and wife, for it bore on its face evidence of want of assent on their part to be bound, expressed by the erasure of their names.

The fact that the deed ultimately came to the hands of the grantee, by whom it was prepared, is of no significance, for he was entitled to its control in the event that Mitchell and wife refused to sign it.

The question is, then, narrowed down to an inquiry whether there was a complete and effective execution and delivery as it regards William L. and John F. Arthur.

The proposition of law on which this depends is that where a deed or other instrument is not completely executed in accordance with the intentions of the parties as expressed either in the instrument itself or in the agreement or understanding in virtue of which its execution and delivery were called for, manual delivery of the incompletely-executed instrument, even to the party entitled to the delivery of a complete instrument, will not be presumed to have

intended full and effective delivery unless it appears by proof that the parties actually intended such manual delivery to be full and final.

A complete and perfect act is necessary for the inception of legal rights, although equity will sometimes take cognizance of incomplete acts and adjust the rights of the parties according to the equity of the case. This principle of law would lead to the conclusion that when the joint act of two or more is called for all must perform, otherwise the act is incomplete both in form and substance.

The authorities fully support this view.

*Robertson* vs. *Evans*, 3 S. C., 320: In this case the point was directly decided.

*Brackett* vs. *Barney*, 18 N. Y., 333: The question in that case was as to the validity of a bond and mortgage on the ground of usury; but it depended on the further question whether the bond and mortgage were to be considered as delivered, so far as the defendant was concerned, at a certain time. The facts with regard to this delivery were, that by the preliminary understanding defendant's wife was to join therein. Defendant executed the bond and mortgage and delivered them to plaintiff without any express understanding that such delivery should be regarded as complete without the signature of the wife. It was held that the delivery was not complete for want of the wife's signature, there being no evidence of any intent on the part of the plaintiffs to waive the signature. The proposition of law already stated will be found fully carried out in this case.

*Leaf* vs. *Gibbs*, 19 Eng. C. L. R., 475: In this case the same rule was applied to a note intended to be the joint note of two, but which was signed by but one of the parties, and delivered in that condition to the payee. Tindall, C. J., held that unless it appeared that the defendant had waived the signature of the third person the note would be void as to him. The delivery of the note executed by one to the plaintiff was not treated as evidence of an intent to waive.

*Parker* vs. *Parker*, 1 Gray, 409: In this case there was not an actual nominal delivery to the vendee, but the question of what is essential to complete execution is solved in harmony with the cases already mentioned. The absence of a release of dower intended by the parties deprived the execution, otherwise full, of completeness.

*Overmann* vs. *Kerr*, 17 Iowa, 486: In this case, relied on by the plaintiffs as in *Parker* vs. *Parker*, there was not an actual manual delivery so as to place the deed beyond the control of the vendor, but the same general rules as to complete execution are recognized.

*Hagood* vs. *Harley*, 8 Rich., 325: This case is in harmony with the preceding, although the execution was held complete. It was objected to a guardian's bond with one surety that it was intended to have the signatures of two sureties. The only circumstance pointed out as leading to this conclusion was that the paper as prepared for execution contained two seals opposite to the places for the names of sureties. It was held that as the law did not require more than one surety the merely clerical act of placing two seals on the paper did not indicate an agreement that it should be signed by two sureties.

*Bronson* vs. *Noyes*, 7 Wen., 188: This case carries the doctrine of allowing the actual intent of the parties in the act of delivery to control the force and effect of an instrument to the furthest limit. The instrument was a bail bond, containing nothing to limit its ordinary force and effect, and yet in furtherance of the intent of the parties with reference to delivery, established by extrinsic testimony, the bail bond was held to have an effect much less than that expressed upon its face.

*Chateau* vs. *Sugdam*, 21 N. Y., 179: In this case the general doctrine was recognized, but the execution was held complete. It was held that execution by a merely nominal party was not essential to an instrument executed by all having a substantial interest. The question under consideration must be distinguished from that which arises where an instrument is fully executed in form according to the intention of the parties but some condition is intended to be annexed to the delivery. In the former case the question is whether the parties have fully completed and consummated that which they intended, while in the latter case it is whether that which was done by them can have the effect that was intended for it by them. The usual mode of making a conditional delivery is by placing the instrument in escrow, although sometimes it will be held, even in the hands of the direct party in interest, as charged with a condition in the nature of a trust.—*Bell* vs. *Ingeston*, 12 Adol. & Ellis, 317. See *Fairbanks* vs. *Metcalf*, 8 Mass., 230.

The rules controlling the effect of a conditional delivery do not interfere with those relating to the effect of incomplete execution

upon delivery; for whether delivery is absolute or conditional, and, when conditioned, whether the instrument is in the hands of a party in interest or a third person as an escrow, the failure of complete execution may be equally alleged in the one case as in the other so as to destroy the delivery, whether conditional or otherwise.

Applying the principles already stated to the deed in question, we find that it calls for a joint covenant of all the parties. This covenant cannot have its intended effect unless all the parties whose signatures were contemplated became parties to it. The deed carries on its face this fact, also in other respects shows that it was intended that all the parties in contemplation should unite in it. Nor does it contain any words expressing the intent to have a several operation as it regards the parties to it.

There is no evidence in the case that the parties have waived the defective execution, and accordingly it must be held inoperative for want of complete execution and delivery.

The next question to be considered is whether the case discloses a contract to convey on the part of the plaintiffs that can be specifically enforced in equity. The defendants place their demand in this regard on two grounds—first, that there was a contract to convey valid under the Statute of Frauds; and, second, that if invalidated by the Statute of Frauds there was still a part performance of the contract sufficient to take the case out of the Statute of Frauds.

It remains to be considered whether either of the plaintiffs are affected by a contract to convey upon consideration; and, if so, whether such contract is valid within the Statute of Frauds.

As it regards William L. and John F. Arthur, it appears that if any contract was made it was without consideration and merely voluntary, and as such cannot be specifically enforced in equity.

The signatures of William and John to the deed are not competent to prove an agreement to convey, inasmuch as the deed being incomplete it cannot be admitted as proof of a contract to convey.—*Parker* vs. *Parker*, 1 Gray, 409.

There is no sufficient proof that Jesse Arthur assented to be bound by any contract to convey the land in question, or that Moore, his agent, entered into any obligation in his behalf. The evidence in this respect is vague and indefinite and far from satisfying the requirements as to proof of this character, even independent of the objection under the Statute of Frauds that such a con-

tract must be completely evidenced in writing. We are satisfied that the evidence fails to show any contract to convey on the part of Jesse. Nor is there any contract to convey made out in evidence on the part of Mitchell and wife. In order to bind Mrs. Mitchell by the contract of her husband, it was necessary to make out affirmatively authority in him to bind her. This was not done. The questions of fact just considered come properly before us, inasmuch as they involve a question of the sufficiency of the evidence as it regards its character and tendency to establish the conclusion derived from it by the Court below. There was nothing from which an intent to contract, as alleged by the defendants, could properly be inferred. It will, under these circumstances, be unnecessary to revise the rulings of the Court below as it regards compliance with the requirements of the Statute of Frauds, there being no sufficient proof of any contract whatever in the case as affecting either of the plaintiffs.

The judgment of the Circuit Court must be set aside and the cause remanded for a decree of partition and account.

*McIver*, A. J., and *Kershaw*, acting A. J., concurred.